OPINION
{¶ 1} The co-guardians of Christine Biersack (hereinafter "Biersack") appeal the judgment of the Mercer County Court of Common Pleas, denying their motion for a court order allowing the attending physician to withdraw nutrition and hydration from their ward pursuant to the authority and procedure of R.C.2133.09.
 {¶ 2} On March 3, 1994, Biersack, then forty-three years old, was involved in an automobile accident. As a result of the accident, Biersack's husband and one of her nine children were killed. Biersack suffered extreme injuries which rendered her a quadriplegic. She never regained consciousness and was confined to a nursing home. Following the accident, a feeding tube was inserted to provide nutrition and hydration to Biersack. She does not, otherwise, rely on life support devices. On or about May 24, 1994, Biersack's oldest child, Gregory Biersack, together with Biersack's father, Carl Henneman, were appointed as her co-guardians.
 {¶ 3} Biersack's condition has not improved since 1994. She continues to be in a comatose state. On October 8, 2003, after consulting with Biersack's physicians and family members, the co-guardians filed a motion to allow the withdrawal of life-sustaining treatment. All of Biersack's seven surviving adult children filed their written consent to the withdrawal with the court.[1] A hearing was held on the motion on December 1, 2003. No one appeared to oppose the motion. In its decision on the motion, the trial court found that Biersack had never expressed her wishes regarding nutrition and hydration during the time she was able to make informed decisions. The trial court, therefore, found that the coguardians had not established, by clear and convincing evidence, that the removal of the feeding tube would have been Biersack's choice and denied the motion.
 {¶ 4} It is from this decision that the co-guardians appeal, setting forth two assignments of error for our review. This case, which presents questions as to the interpretation and application of R.C. Chapter 2133, is a matter of first impression with this court.
 ASSIGNMENT OF ERROR NO. I The lower court erred when it concluded that in an informalverbal declaration, the matters of life sustaining treatment andthe withdrawal of nutrition and hydration are two independentmatters that must be addressed separately.
 ASSIGNMENT OF ERROR NO. II The lower court erred in not properly applying the clear andconvincing standard to its analysis of Ohio Revised Code Section2133.09.
 {¶ 5} For clarity of analysis, we will address the two assignments of error together.
 {¶ 6} Biersack's co-guardians argue that the trial court erred by holding Biersack's informal verbal declaration of her wishes regarding life sustaining treatment to the strict standard of formal, written living wills. In using that standard, the co-guardians argue that it was error for the trial court to determine that nutrition and hydration must be addressed separately in an informal verbal declaration. Further, the co-guardians maintain that they had produced clear and convincing evidence sufficient for the trial court to determine that Biersack's expressed wishes regarding life sustaining treatment also encompassed her desire not to be kept alive by a feeding tube.
 {¶ 7} We recognize that a decision on withdrawal of life support which involves a family member the parties love and care deeply about is a sensitive matter laden with conflicting emotional and spiritual concerns. One of the intense desires a party undoubtedly has is that the circumstances were different and that there would be no need for such a decision to be made.
 {¶ 8} To both guide and to oversee decision-making in this sensitive area, the Ohio General Assembly, in 1991, passed a form of the Modified Uniform Rights of the Terminally Ill Act. R.C. Chapter 2133 sets forth the guidelines for removal of life support, including nutrition and hydration, for adults who have a living will and for those who do not. In re Co-guardianship ofMyers (1993), 62 Ohio Misc.2d 763, 771.
 {¶ 9} R.C. 2133.09 sets forth the procedure for removal of nutrition and hydration. In the event a patient has not made an advance directive, R.C. 2133.09 provides that consent to withdraw nutrition and hydration may be given by a guardian. A consenting guardian, however, must apply to the probate court for the issuance of an authorizing order permitting the attending physician to actually withdraw nutrition and hydration. R.C.2133.09(C)(1). The trial court, in this regard, exercises an essential oversight function. Before the court may issue an order authorizing the withdrawal of nutrition and hydration, the evidence before the court must affirmatively demonstrate the existence of all of the statutory requirements of R.C. 2133.09. Pursuant to R.C. 2133.09 (C)(2) the guardian must establish by clear and convincing evidence, to a reasonable degree of medical certainty, all of the following:
(a) The patient currently is and or at least the immediately preceding twelve months has been in a permanently unconscious state.
(b) The patient no longer is able to make informed decisions regarding the administration of life-sustaining treatment.
(c) There is no reasonable possibility that the patient will regain the capacity to make informed decisions regarding the administration of life-sustaining treatment.
(d) The conditions specified in divisions (A)(1) to (4) of this section have been satisfied.
(e) The decision to withhold or withdraw nutrition and hydration in connection with the patient is consistent with the previously expressed intention of the patient * * * or isconsistent with the type of informed consent decision that thepatient would have made if he previously had expressed hisintention with respect to the use or continuation, or thewithholding or withdrawal, of nutrition and hydration * * *"
R.C. 2133.09 (C)(2). Emphasis added.
 {¶ 10} Divisions (A)(1) to (4) of R.C. 2133.09 require that written consent must have been given by the appropriate specified persons, that a probate court must not have reversed the consent of those persons to the withdrawal of nutrition and hydration, that the written consent must be given to the attending physician, and that the attending physician and a consulting physician must determine "in good faith, to a reasonable degree of medical certainty, and in accordance with reasonable medical standards, that nutrition and hydration will not or no longer will provide comfort or alleviate pain in connection with the patient."
 {¶ 11} The statute also sets out qualifications of the consulting physician that must be met and requirements for the consulting physician to follow. The consulting physician must be a physician who has examined the patient and who is qualified, by virtue of advanced education or training, limited practice, experience, or certification as a specialist to determine whether the patient currently is and for at least the immediately preceding twelve months has been in a permanently unconscious state. R.C. 2133.08(A)(2).
 {¶ 12} The trial court found through witness testimony that the coguardians had established by clear and convincing evidence that the requirements of R.C. 2133.09(C)(2)(a) through (d) had been met. Timothy Heinrichs, Biersack's doctor, testified that Biersack suffered severe head trauma as a result of the accident which resulted in extensive brain damage and has been in a vegetative state since the automobile accident in 1994.[2]
Dr. Heinrichs stated that Biersack's condition is gradually declining, her body is slowly breaking down, and Biersack is not able to make informed decisions. Dr. Heinrichs testified that the Biersack's ability to recover and regain consciousness is nonexistent. Dr. Heinrichs opined that Biersack feels no pain and removing the feeding tube that is providing her nutrition and hydration would not cause her pain. Dr. Heinrichs also stated that Dr. Phillip Masser, the consulting physician, concurred with his opinions regarding Biersack's condition.
 {¶ 13} Three of Biersack's children, Gregory, Todd and Matthew, testified at the hearing regarding Biersack's previously expressed intentions and the standard imposed by R.C.2133.09(C)(2)(e). Gregory testified that his mother once stated that she would never want to be "kept alive by machine or any type of life support." Gregory stated he knew withdrawing the feeding tube would be something that Biersack would want. Todd also testified that removing the feeding tube was the right thing to do. Matthew testified that once he and Biersack were watching a television program about a woman who was in a vegetative state and that his mother commented that she would never want to live in that type of condition. Matthew further testified that, in his opinion, his mother would not want to be kept alive by artificial means and that if she had the choice, she would decide to remove the feeding tube.
 {¶ 14} The trial court interpreted R.C. 2133.09(C)(2)(e) as requiring Biersack to have specifically stated her intentions regarding nutrition and hydration. Therefore, since no testimony was presented that Biersack ever specifically referred to a feeding tube or the continuation or discontinuation of nutrition and hydration, the trial court found that the co-guardians had not presented sufficient evidence to meet R.C. 2133.09(C)(2)(e).
 {¶ 15} Our analysis of an appeal from the trial court's construction of a statute is conducted under a de novo standard of review since statutory interpretation is a matter of law.State v. Wemer (1996), 112 Ohio App.3d 100, 103. Therefore, we review the decision independently and without deference to the trial court's interpretation. Additionally, in order for an appellate court to be able to review whether the judgment of the trial court is in conformity with the statutory requirements, the evidence must expressly appear in the record.
 {¶ 16} After a review of R.C. Chapter 2133, we find that "nutrition and hydration" and "life sustaining treatment" are addressed separately and, for the purposes of a living will, each must be referred to specifically. However, the statutory framework also provides a procedure for consent to be given under certain circumstances where a patient has not made an advance directive or prepared a living will. In that instance, R.C.2133.09(C)(2)(e) specifies that the trial court shall issue an order withdrawing nutrition and hydration if it finds that the withdrawal is consistent with the previously expressed intention of the patient or "is consistent with the type of informed consent decision that the patient would have made if hepreviously had expressed his intention with respect to the use or continuation, or the withholding or withdrawal, of nutrition and hydration." Emphasis added. Therefore, in the case of an informal verbal declaration where a patient has not previously expressed his intention regarding nutrition and hydration, it would be contrary to the clear requirements of R.C.2133.09(C)(2)(e) to require a guardian to establish that the patient specifically referred to nutrition, hydration or a feeding tube.
 {¶ 17} Pursuant to the statute, then, the co-guardians had the burden to establish, by clear and convincing evidence, that the withdrawal or withholding of nutrition and hydration would be what Biersack would have desired. This is made evident by R.C.2133.09(B)(3) which provides that a patient's wishes can be "inferred from the lifestyle and character of the patient, andfrom any other evidence of the desires of the patient, prior to his becoming no longer able to make informed decisions regarding the administration of nutrition and hydration." Emphasis added. We, therefore, find that the trial court erred in interpreting R.C. 2133.09 (C)(2)(e) to require Biersack to have specifically declared her wishes regarding nutrition and hydration absent a written living will declaration.
 {¶ 18} Accordingly, based on the uncontradicted testimony of Biersack's children who testified that Biersack had expressed an intent never to be "kept alive by machine or any type of life support" and stated that she would not want to live in a vegetative state, we hold that clear and convincing evidence existed pursuant to R.C. 2133.09(C)(2)(e) to support an inference that withdrawing nutrition and hydration is consistent with Biersack's wishes.
 {¶ 19} The co-guardians' first and second assignments of error are, therefore, sustained.
 {¶ 20} This determination does not end our inquiry, however. Upon the review and interpretation of R.C. 2133.09, we are unable to find that the consulting physician's qualifications and his medical opinion, as required by statute, have been adequately presented to the trial court.
 {¶ 21} The evidence required to be provided by physicians in cases arising under R.C. 2133.09 is of fundamental importance. A physician's specialized knowledge is essential to the trial court's fact finding and to the rendering of a proper decision. Due to their importance, we find that the opinions and conclusions of a physician should be presented by personal in-court testimony when, in a case such as this, the action is not adversarial and the usual scrutiny occasioned by an opposing party is lacking.[3] This practice will better permit the court to properly exercise its oversight function in cases of this nature.
 {¶ 22} To be clear and convincing, the testimony of each physician must, at least, encompass the following: the physician's education, training, and experience; the physician's history and experience with the patient; the fact that the physician personally examined the patient; and, the opinions required by the statute. See R.C. 2133.08(A)(2); 2133.09(A)(3). Ordinarily, each physician should also testify to his opinion that the other physician in the matter is qualified, by reason of advanced education or training in one of the three categories prescribed by statute, to make the findings and provide the opinions about the patient which are required by the statute.
 {¶ 23} Moreover, the requirement of R.C. 2133.09(A)(3) that two physicians come to the same conclusion regarding the patient's medical condition and prognosis evinces a legislative intent that the consulting physician's opinion should be more than a conclusory adoption of the attending physician's opinion. Rather, it should be independently stated and, ideally, should include the reasons upon which it is based.
 {¶ 24} Dr. Phillip Masser was the consulting physician in the case sub judice. At the hearing, Dr. Heinrichs, the attending physician, testified that Dr. Masser was a general practitioner who had been in practice since 1982. No testimony was provided regarding any advanced education or training of Dr. Masser. Dr. Heinrichs stated that Dr. Masser had examined Biersack and that he concurred completely with Dr. Heinrichs' opinion. However, the only evidence from Dr. Masser himself is a brief unsworn statement typed onto the bottom of the affidavit of Dr. Heinrichs that was submitted with the filing of the original Motion to Withdraw Nutrition and Hydration. Masser's statement, in its entirety, states: "I, Phillip R. Masser, M.D., 724 E. Wayne Street, Celina, Ohio 45822, have made an independent examination of Christine B. Biersack as a consulting physician and concur in the diagnosis and prognosis of Dr. Timothy A. Heinrichs as stated above."
 {¶ 25} We find that Dr. Masser's opinion is not in conformity with the statutory requirements of R.C. 2133.09(A)(3). First, it is not sworn testimony and, therefore, is hearsay. See Evid.R. 801(C). Second, it is not altogether clear whether Dr. Masser's independent examination of Biersack was a physical examination of the patient herself, an independent review of Biersack's medical records, or both. Third, there is no evidence of Masser's education, training and experience to demonstrate conformity with the specific statutory requirement that the consulting physician be "* * * by virtue of advanced education or training * * * qualified to determine whether the patient * * *" is, and for the immediately preceding 12 months has been, in a permanently unconscious state." R.C. 2133.08(A)(3). Fourth, Masser's statement does not specifically set out his opinion as a separate expression of his own. Rather, it is merely a one sentence affirmation of the attending physician's opinion. In light of our understanding of the statutory requirements, we hold that Dr. Masser's consulting opinion is inadequate as presented to the trial court.
 {¶ 26} Having found error prejudicial to appellants herein, in the particulars assigned and argued, we reverse the judgment of the trial court regarding the trial court's findings as to Biersack's desires regarding the withdrawal of nutrition and hydration pursuant to R.C. 2133.09(C)(2)(e) and, in light of our analysis of R.C. 2133.09(A)(3), remand the matter for further proceedings to permit the appellants the opportunity to supplement the testimony of Dr. Masser so that the trial court may adequately evaluate his qualifications and opinions in accordance with this opinion.
Judgment reversed and remanded for further proceedings.
 Shaw, Cupp and Rogers, J.J., concur.
[1] Biersack's other surviving child is a minor.
[2] From Dr. Heinrichs' testimony, we understand his vernacular description of Biersack's condition as "vegetative" to have the same meaning as "permanent unconscious state," defined in R.C.2133.01(U).
[3] For this reason, R.C. 2133.09(C)(1) specifically requires that the attending physician and consulting physician receive notice of the hearing on the application to withdraw nutrition and hydration.